## DIANE C. KEM v. DEPARTMENT
## OF REVENUE

Richard V. Bayless, Bauer, Murphy, Bayless & Fundingsland, Portland, represented plaintiff.

Alfred B. Thomas, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered January 31, 1973.

CARLISLE B. ROBERTS, Judge.

This is an appeal from the Department of Revenue's Order No. VL 72-23, affirming the order of the Washington County Board of Equalization, establish-

ing the true cash value as of January 1, 1970, of the following described real property:

| Assessor's Account No. | | | Code | Site |
|---|---|---|---|---|
| 1S1 | 2C | 312 | 48-29 | Jentz Drive-in |
| 1S1 | 2C | 600 | 48-29 | Cedar Hills Shopping Center |
| 1S1 | 2C | 601 | 48-29 | Safeway Store |
| 1S1 | 2C | 200 | 48-29 | American Oil |
| 1S1 | 9DA | 3000 | 50-16 | Standard Oil |
| 1S1 | 9DA | 3100 | 50-16 | Standard Oil |

The plaintiff had purchased the property in May 1969 for $650,000. The assessor found the true cash value of the property to be $1,389,700; the county board of equalization reduced it to $1,247,500.

Tax Lot 600 (5.59 acres) is known as the Cedar Hills Shopping Center. Contiguous thereto is Tax Lot 601 (2.17 acres), occupied by a Safeway Store. The plaintiff owns the improvement on these tracts, subject to numerous leases. North of the Safeway Store, across Southwest Park Way Drive, the land comprising Tax Lot 200 (.95 acre) is owned by the plaintiff, with improvements owned by the lessee, American Oil Company. West of the Safeway site, across Southwest Marlow Avenue, is Tax Lot 312 (.18 acre), the Jentz site, the improvements thereon being owned by the lessee. About one mile to the south and west, on the southeast corner of Southwest Cedar Hills Boulevard and Southwest Fairfield Street, the adjacent Tax Lots 3000 and 3100 are leased by the Standard Oil Company, the lessee owning the improvements thereon.

Plaintiff's first witness, one of Oregon's best-known fee appraisers, had been closely associated with the

Cedar Hills Shopping Center from the time of its inception in 1950, when 1,200 acres of contiguous farmlands were acquired by a subsidiary of Commonwealth, Inc. Plaintiff's second witness stated that he was not a real estate appraiser, but he is a licensed real estate broker and property manager who, serving successive corporate employers and the plaintiff, has been active in the property management of the subject property for many years.

The two witnesses testified that the original 1,200-acre area was developed generally for residential purposes and that the shopping center was a part of the original plan, designed to provide services for the neighborhood. The center went into income production in 1954 with the Safeway supermarket and a Union oil station. In 1955, the balance of the center was largely completed. In 1956, a bank moved from the interior mall to its own free-standing building on the site. In 1959, a small medical building was placed directly south of the center mall. As has been noted, the center and the Safeway site comprise 7.76 acres. Another 17 or 18 acres, designed for expansion, lay to the east of the developed center but, beginning in 1959, the State Highway Commission successfully undertook to obtain the area for use as an interchange between the Sunset Highway and the Salem Freeway, stopping further development.

Plaintiff's first witness testified that he had appraised the property on several occasions, the last being in December 1968. He stated that he had access to all the necessary information and had found a stabilized net income of $53,600. This he capitalized at a rate of 8½ percent to obtain a value of $630,580. He then advised his client that the property should be

sold for $600,000 to $650,000. In his testimony he laid great stress on the highway taking, saying that this "restricted any future potential growth" and that the property "has no growth potential."

Unfortunately, the valuation proffered by the witness is based only upon his personal authority, no supporting data being offered. The record is barren of material on which an independent judgment could be made.

The second witness was under instructions from his then employer to sell the property (because of the employer's change of business policy) and he simply adopted the value set thereon by the first witness. He offered the property for sale for $650,000 and received several responses. Of these, the terms proposed by the plaintiff were the most satisfactory and were therefore accepted.

Plaintiff's witnesses testified that the sale to plaintiff was, in and of itself, the best evidence of the market because the transaction was at arm's length and between knowledgeable parties. The thrust of the testimony of plaintiff's second witness was that the income approach could be relied upon because all of the rentals represented "economic rents" (i.e., typical of the market as well as being actual rent), particularly because so many of the rentals were fortified by percentage leases. However, the court notes that only 9 of 34 rentals made percentage payments for the year ending December 31, 1969, and that several of the important tenants, with relatively long leases, including American Oil, the bank, the drive-in, Safeway and Standard Oil, paid small rents and no percentage. See Plaintiff's Exhibit 10.

A recent sale of subject property is some evidence of value. In a particular instance, it may possibly be the strongest evidence available. But such evidence can never be as convincing as a number of reasonably comparable sales which, taken together, give less impact to the factors of strength and weakness of the bargaining parties. Further, plaintiff's witnesses, concerned as they were with management and sale of the subject property, could not be as objective in the premises as strangers to the transaction.

In the Department of Revenue's Order No. VL 72-23, Washington County was criticized for not producing "evidence and testimony which convincingly supports the valuation placed upon the roll." As often happens, the defendant has taken advantage of the provision that all proceedings before the court shall be original, independent proceedings and shall be tried without a jury and de novo. ORS 305.425. Accordingly, it has reexamined its evidence, has utilized all the information obtained through the hearings before the Washington County Board of Equalization and before the Department of Revenue, has obtained additional data and has presented its testimony in detail. The true cash value of the land in each tax lot has been based on comparable sales and the value of the improvements owned by the plaintiff demonstrated by the income method. The exhibits placed in the record and the oral testimony of the defendant's witness (who impressed the court as being a highly capable appraiser) give a step-by-step approach to value with the reasoning which accompanied each step. In spite of the vulnerability which this engendered, the witness was able to support his conclusions under a rigorous cross-examination. (In his determination of the value of the Safeway improvements, based upon

an income approach, he had assumed that the plaintiff's lease with Safeway was on a "net-net-net" basis; in rebuttal, the plaintiff was able to demonstrate that the lessor paid taxes, fire insurance and maintenance of the building exterior. However, the court concludes that the defendant's data better reflect economic rent than the present lease, which was originally executed in 1953.)

The defendant's witness testified that, based on his findings, the indicated true cash value of the subject property, as of January 1, 1970, was as follows:

| Tax Lot No. | Site | Land | Improvements | Total |
|---|---|---|---|---|
| 312 | Jentz | $ 23,500 | $ | $   23,500 |
| 600 | Shopping Center | 250,300 | 618,800 | 869,100 |
| 601 | Safeway Store | 101,400 | 82,000 | 183,400 |
| 200 | American Oil | 112,500 | | 112,500 |
| 3000 | Standard Oil | 21,900 | | 21,900 |
| 3100 | Standard Oil | 37,100 | | 37,100 |
| | | $546,700 | $700,800 | $1,247,500 |

He concluded that the true cash value of the subject property as of January 1, 1970, was not less than $1,247,500, as found by the board of equalization.

ORS 305.427 provides that, in all proceedings before the tax court, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief. Although the difference in asserted true cash value between the plaintiff and the defendant is substantial, the plaintiff's testimony omitted detail which might make it possible to rationalize the difference. The impact upon the plaintiff's witnesses of the taking by the State Highway Department, as affecting the

future development of the shopping center, has been noted. In rebuttal, the testimony of the defendant's witness was that all space subject to lease was continuously filled and the evidence indicated that the chief problem for the owner was that the leases were not presently economic. The relationship of subject property to all like property in the market, from an economic viewpoint, is a fundamental requirement, because the property is being valued for purposes of taxation. Equality in taxation requires a common denominator as well as accurate numerators.

The defendant sustained its position by a preponderance of the evidence and the order appealed from is affirmed.